**CITY OF BIRMINGHAM et al. v. SEABOARD AIR LINE RY. CO.**

**SEABOARD AIR LINE RY. CO. v. CITY OF BIRMINGHAM et al.**

6 Div. 245, 245–A.

Supreme Court of Alabama.

April 27, 1933.

Rehearing Denied June 9, 1933.

W. J. Wynn and Jas. H. Willis, both of Birmingham, for appellants.

78

Cabaniss & Johnston, of Birmingham, for appellee.

Harry Seale, City Attorney, of Mobile, filed a brief as amicus curiæ, in support of appellants' contentions.

Stokely, Scrivner, Dominick & Smith, of Birmingham, filed a brief as amici curiæ in support of the contentions made by appellee.

PER CURIAM.

The majority, consisting of ANDERSON, C. J., and GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., hold that the property in classes 1, 2, 3, 4, 5, 6, 7, 8, and 9 (as stated in the opinion of BROWN, J.) is a part of complainant's system of railway, in actual use as such and necessary to its operation, and is not within the influence of section 2174 of the Code of 1923 (as amended by Gen. Acts 1927, p. 754, § 3), and the assessments made against said property are void for want of jurisdiction on the part of the city commission to levy such assessments; but they do not hold that the Legislature is without power to make such assessments and make it a personal liability on the railway company to pay such assessments, if special benefits accrue to the property therefrom.

All the justices are of the opinion that the assessment of the property in the tenth class is within the influence of the statute, and the assessment thereon is valid.

THOMAS, J., concurs with the majority to all the assessments, except the assessment against class 9, and is of opinion that this

property is assessable under section 2174 of the Code.

BROWN, J., is of opinion that the assessments are valid except as to classes 1, 2, and 3; his views being stated fully in the following opinion.

It therefore results that the decree of the circuit court is affirmed, in so far as it holds that the bill has equity as to classes 1, 2, 3 and 4, and is without equity as to class 10. In all other respects, it is reversed, and the cause is remanded.

The costs of the appeal are taxed in equal parts against the appellant and the appellee.

BROWN, Justice (concurring in part, and in part dissenting).

This appeal is by the respondents from a decree overruling their demurrers to the bill as last amended and to certain paragraphs thereof, and sustaining the demurrers to certain aspects and paragraphs of the bill, and, by consent of appellants indorsed in writing on the transcript, as authorized by rule 3 governing the practice of this court, the appellee has assigned errors as upon a cross appeal. Rule 3, Supreme Court Practice, Code 1923, vol. 4, p. 881. See, also, section 6091 of the Code.

The bill, in short, alleges that the complainant is engaged in the business of a common carrier of freight and passengers, and "operates a general railroad system as a common carrier through the State of Alabama and other States, including Georgia, Florida, South Carolina, North Carolina, and Virginia. Part of its main line, as will be more fully hereinafter described, passes directly through the City of Birmingham, partially over property owned in fee by complainant and partially along and across certain of the streets of said city and partially along a 100-foot strip of land in which complainant owns an easement or right of way for the operation of its railroad trains, the said right of way lying 50 feet on each side of the center line of complainant's main line single track between Birmingham, Alabama, and Atlanta, Georgia"; that "The said Commission of the City of Birmingham has enacted various ordinances, hereinafter more specifically set forth, for the paving of certain streets and sidewalks and for the curbing and guttering thereof, and also for the building of certain sewers. All of said improvements abut or border upon, or are in close proximity to, the right of way and other properties of said complainant as above described, and for the payment of the cost of said improvement the Commission of said City has adopted resolutions assessing against the properties of this complainant various sums as complainant's alleged legal proportion of the cost of said improvements by reason of complainant's

ownership of the properties referred to and hereinafter more specifically described. Said ordinances and assessments are hereinafter set forth and described as follows."

Then follows in the several paragraphs of the bill, statement of the ordinances by numbers, a description of the property affected, stating the amount of the assessment against each block or parcel, and the character of the improvement.

We deem the classification of the properties and assessments in appellants' brief, which appellee concedes to be correct, sufficient to an understanding of the principles of law applicable. The classification follows:

*"First Class*

*"Assessments against main line right of way held by easement, including roadbed in use.*

"Property assessed under: Imp. Ord. 712–D and Pro. No. D–41654 (Par. V, Page 6); Imp. Ord. 858–D and Pro. No. 48681 (Par. VI, Page 6); Imp. Ord. 492–D and Pro. No. D–45865 (Par. VII, as amended, Page 10); Imp. Ord. 622–D and Pro. No. D–31173 (Par. VIII, as amended, Page 11); Imp. Ord. 858–D and Pro. No. D–48681 (Par. VIII–A, Page 11); Imp. Ord. No. 863–D and Pro. No. D–74209 (Par. VIII–B, Page 11).

*"Second Class*

*"Assessments against lots held in fee, including main line roadbed in use.*

"Lots 21, 22, 23 and 24, Meades Subdivision of Block 15, Montgomery & Parkes Survey (Par. VIII, Page 8).

*"Third Class*

*"Assessments against specifically described parcels of land lying outside the roadbed, but within the lateral lines of right of way held by easement.*

"Parcels assessed under: Imp. Ord. 568–D and Pro. No. D–33318 (Par. II, Page 4); Imp. Ord. 659–D and Pro. No. 38350 (Par. III, Page 4).

*"Fourth Class*

*"Assessments against parcels of land, owned in fee, lying outside roadbed and outside right of way held by easement, but within the projected lateral lines of right of way held by easement.*

"Parcels assessed under: Imp. Ord. 568–D and Pro. No. D–33317 (Par. II, Page 4); Imp. Ord. 659–D and Pro. No. D–38347 (Par. III, Page 5); Lots 20 and 25, Meades Subdivision of Block 15, Montgomery & Parkes Survey (Par. VIII, Page 8).

*"Fifth Class*

*"Assessments against lots owned in fee and lying outside main line right of way or right of way projected, but traversed by a side line*

*of railway track connecting with main line track.*

"Parcels assessed under: Imp. Ord. 1218–D and Pro. Nos. D–76070, D–76071 and D–76072 (Par. VIII–C, Page 12).

#### *"Sixth Class*

*"Assessments against lots owned in fee and lying outside main line right of way or right of way projected, but occupied by switch tracks, side tracks and repair tracks, constituting freight yard.*

"Lots 1 thru 10, Block 116; Lots 1 thru 10, Block 199; Lots 1 thru 10, Block 417; and Lots 1 thru 10, Block 220; assessed under Imp. Ord. 1349–D (Par. VIII–E, Page 21).

#### *"Seventh Class*

*"Assessments against property owned in fee and lying outside main line right of way or right of way projected and occupied by roundhouse and repair tracks.*

"Parcels assessed under: Imp. Ord. 745–D and Pro. Nos. D–44446 and D–44467 (Par. I, Page 3); Imp. Ord. 786–D and Pro. No. 44469 (Par. IV, Page 5).

#### *"Eighth Class*

*"Assessment against property owned in fee and lying outside main line right of way and right of way projected and occupied by coal bin, yard office and two single tracks.*

"Parcel assessed under: Imp. Ord. 786–D and Pro. No. D–41463 (Par. IV, Page 5).

#### *"Ninth Class*

*"Assessments against property owned in fee and lying outside main line right of way and right of way projected and occupied by building used as passenger and freight station.*

"Assessment under Imp. Ord. 659–D and Pro. No. D–38346 (Par. III, Page 5).

#### *"Tenth Class*

*"Assessments against property owned in fee and lying outside main line right of way and right of way projected, and not in present use for railroad purposes, but reserved for future expansion.*

"Assessments under: Imp. Ord. 745–D and Pro. No. D–44402, D–44422, D–44423, D–44444, D–44445 (Par. I, Page 3); Imp. Ord. 858–D and Pro. Nos. D–48645, D–48644, D–48643, D–48642, D–48641, D–48667 (Par. VI, Pages 6–7); Imp. Ord. 863–D and Pro. Nos. D–73543, D–73544 (Par. VIII–B, Page 11); Imp. Ord. 492–D. All property described in Par. VII, as amended, (Page 7), *except* right of way assessed under D–45865 (Par. VII, as amended, Page 10); Imp. Ord. 1349–D—Lots 11 thru 20, Block 116; Lots 11 thru 20, Block 199; Lots 11 thru 20, Block 220; Lots 11 thru 20, Block 417 (Par. VIII–E, Page 22).

"The demurrers of the defendants challenged the equity of the bill as it related to each separate class of railroad property (13–19; 23). The decree of the lower court upheld the equity of the bill in those aspects which sought injunction against sale of the first four classes of property (24–25), and denied the equity thereof in those aspects which sought injunction against sale of the remaining classes (25). * * *

"Complainant alleges that each of said assessments is void and is unauthorized by statute or otherwise, and that each of said lots is necessary for the proper operation and maintenance of complainant's railway system, and that each of said assessments so made by the City of Birmingham is a cloud upon complainant's title which cloud complainant is entitled to have removed, complainant being in possession of said property and being without remedy except in this Honorable Court."

Attached as exhibits to the bill are several maps or plats of the locus in quo, showing the several improvements and the location of the complainant's properties.

The relief prayed is "that each of said assessments be cancelled as a cloud on complainant's title and that the said defendants and each of them be forever enjoined from advertising and selling· said properties, or any of them, or from attempting to enforce in any manner any of the said assessments;" and for general relief.

The demurrers going to the bill as a whole question its equity, and by specific grounds question its sufficiency for that "it does not appear with sufficient certainty that the assessment or assessments against which relief is sought, were made or levied against land wholly within complainant's right of way and indispensable to the reasonable operation of complainant's railroad"; that "it does not affirmatively appear that the land assessed for the improvements made, was occupied· by complainant for railroad purposes at the time of assessment or at the time the bill was filed"; that "it does not appear that the land assessed was actually occupied for and exclusively devoted to railroad purposes at the time it was assessed or at any time subsequent thereto"; that "it does not appear with sufficient certainty that the complainant's alleged right of way is of reasonable width"; that "it does not appear with sufficient certainty that the assessment or assessments complained of are against land within a right of way of reasonable width"; that "it does not appear with sufficient certainty that the assessment complained of is against land within a right of way necessary to the operation of complainant's railroad trains."

Some of the grounds of demurrer were directed to each of the several paragraphs of

the bill; each related to one or more of the several assessments.

When the averments of the bill are considered along with the exhibits, it is not entirely clear that the proceedings of the city commission as to all of these assessments were under the provisions of section 2174 of the Code 1923, as amended by Gen. Acts 1927, p. 754, § 3, authorizing a proceeding in rem against property benefited. To be more specific, some of the exhibits indicate that some parts of the street improvements indicate that the pavement was laid in between the rails, and immediately up thereto on each side, so as to bring such assessment within the influence of section 2189 of the Code 1923, as amended by Gen. Acts 1927, p. 763, § 18, but the case, however, has been argued and treated on the theory that the improvements were made in pursuance of the powers conferred by section 2174, and, inasmuch as the question is not presented by specific grounds of demurrer, we pass this defect without further comment.

Taking the averments of the bill as true, yet resolving all intendments against the rights which it asserts, as against special grounds of demurrer, it appears that the complainant has the legal title to the properties involved, and is in possession thereof. Therefore its equity must be sustained, if at all, as a statutory bill to quiet title brought under the provisions of section 9905 of the Code of 1923.

While the pleader does not follow the prescription of the statute by alleging that no suit is pending "to enforce or test the validity of such title, claim or encumbrance," calling on the respondents to avow and set forth their claim, right, or title, it appears inferentially that no suit is pending between the parties, and, as against the general demurrer for want of equity, the defects noted will be treated pro hac vice as amended. McDuffie v. Lynchburg Shoe Co., 178 Ala. 268, 271, 59 So. 567; Shannon v. Long, 180 Ala. 128, 60 So. 273; Whiteman v. Taber, 203 Ala. 496, 83 So. 595; Seeberg v. Norville et al., 204 Ala. 20, 85 So. 505.

The proceedings of the city commission and the ordinances are not set out in the bill or made exhibits thereto; nor are we advised by the averments of the bill whether the infirmity which renders the ordinances void appear on the face of the proceedings, or must be shown by evidence aliunde, but we find in the concluding paragraph of the bill as last amended the allegation "that each of said assessments is void and is unauthorized by statute or otherwise, and that each of said lots is necessary for the proper operation and maintenance of complainant's railway system, and that each of said assessments so made by the City of Birmingham is a cloud upon complainant's title," etc.

This averment is the foundation on which complainant rests the equity of its bill, and is the basis of its contention that section 2174 of the Code does not apply to railroad companies in the exercise of franchises as common carriers, and does not confer on the governing bodies of cities and towns power to make assessments for any part of the costs of local improvements against properties owned by such companies, if the property is used in such sense; or is held and reserved for use in the expansion of the system and extension of its facilities, and is necessary to that end.

As supporting this contention, the complainant cites the following cases: City of Decatur v. Southern Railway Co., 183 Ala. 531, 62 So. 855, 856, 48 L. R. A., (N. S.) 231; Id., second appeal, 187 Ala. 364, 65 So. 536; Alabama City v. Alabama Power Co., 213 Ala. 644, 106 So. 39; Nashville, C. & St. L. Ry. Co. v. Town of Boaz, et al., 213 Ala. 667, 106 So. 192, and City of Mobile v. Mobile & Ohio R. Co., 226 Ala. 693, 147 So. 606.

In the case first above cited, it was ruled on the first appeal that *a small segment of the right of way of a railroad company engaged in the active exercise of its franchise* as a public carrier was affected with public interest and was not subject to sale in a proceeding in rem under the local improvement statutes for special benefit. The theory of that decision is stated thus: "The right of way of a railway company is a part of the company's property, *without which it could not perform the duties it owes to the public.* To subject a portion of the right of way to a sale to enforce a local improvement would greatly embarrass, if not entirely destroy, the ability of the company to perform its public functions. The rights of the public are regarded as superior to the rights of any individual, or group of individuals. Local assessments are usually levied on a small portion of a railway right of way, varying from a few feet in length to miles in length. To permit such portion to be sold would prevent the operation of the road, and, on grounds of public policy, it is held that the *ordinary remedy* of enforcing the collection of a local assessment by a sale of the property benefited *does not apply to the enforcement of an assessment against the right of way of a railway company.* While there is a conflict of authority on this subject, the decided weight is that *the right of way, if sold to pay the assessment, must be sold as a whole, and not in broken fragments.* 'The public have a right to have a railway remain an entirety, and it would be destructive to public interest to permit it to be broken up into disjointed and practically useless fragments.' Even if it be conceded that a personal judgment for the amount of the assessment can be rendered, still it does not follow that a railroad can be sold in fragments." (Italics supplied.)

On the second appeal this principle was reaffirmed, with the further observation "that the assessment upon the property in question [a segment of right of way] will not support a proceeding in rem for the reasons set out upon the former appeal, and that it will not authorize a personal judgment for the reasons set out in the case of City of Huntsville v. Madison County, 166 Ala. 389, 52 So. 326 [139 Am. St. Rep. 45]. We did not hold in said case, supra, and do not now hold, that the Legislature could not provide for a personal judgment for said special tax; but we then held, and now hold, that the statute in question did not authorize a personal judgment." City of Decatur v. Southern Railway Co., 187 Ala. 366, 65 So. 536.

Alabama City et al. v. Alabama Power Co., 213 Ala. 644, 106 So. 39, was a bill filed under the statute to remove a cloud from the title on a segment of the complainant's right of way, resulting from an ordinance of the city purporting to fix a lien for a part of the cost of improving Kyle avenue, a public thoroughfare in said city. The circuit court, on the authority of City of Decatur v. Southern Railway Co., supra, sustained the equity of the bill, and on the appeal the city's contentions were: "(1) the bill shows that complainant has a right of way 25 feet wide, with about 9 feet on each side of its track, which could be sold without interfering with complainant's business or with the exercise of its franchise; and (2) in the Decatur cases a section of the right of way had been actually levied upon and advertised for sale."

This court, in answering these contentions, observed: "As to the first objection, the Decatur Cases do not except from the operation of the rule declared any part of the railroad's right of way, and, moreover, the case made by the bill is against an assessment imposed indiscriminately upon defendant's right of way, which of necessity includes the roadbed and track." The suggested distinctions do not suffice to relieve this case from the controlling influence of the Decatur Cases, supra, and the decree of the trial court overruling the demurrers will be affirmed.

"It may be noted that the right of the municipality to assess against the railroad the cost of street paving laid between its rails, and 18 inches on either side (section 2189, Code 1923), has been recently upheld by this court in the case of Alabama Traction Co. v. Selma Tr. & Sav. Bank, 213 Ala. 269, 104 So. 517. But under that statute the paving cost is made a personal obligation of the railroad, secured by a blanket lien on its entire property. * * * But that statute and that decision have no application to this case." Alabama City et al. v. Alabama Power Co., 213 Ala. 644, 646, 106 So. 39, 40.

Nashville, C. & St. L. Ry. v. Town of Boaz et al., 213 Ala. 667, 668, 106 So. 192, 193, was a petition for the common-law writ of certiorari, filed by the railway company against the town of Boaz, to quash the proceedings of the town council levying a part of the cost of street paving at a street crossing, and the scope and effect of the decision is thus stated:

"The assessment for paving against appellant railway is against that portion of the railway along Main street in the town of Boaz, where said railway crosses said street diagonally. The entire proceedings are based upon the provisions of the statute relating to improvements to abutting property owners. Section 2174 et seq., Code 1923. The assessment against appellant railway is expressly based upon the increased value of its property, and lien fixed against that portion of its right of way described in the proceedings. That there can be no enforcement of such a lien against a segment of the railway track was expressly held by this court in City of Decatur v. Southern R. Co., 183 Ala. 531, 62 So. 855, 48 L. R. A. (N. S.) 231; Id., 187 Ala. 364, 65 So. 536, and reaffirmed in the very recent case of Ala. City v. Ala. Power Co. [213 Ala. 644], 106 So. 39.

"In Ala. Traction Co. v. Selma Tr. & Savs. Bank, 213 Ala. 269, 104 So. 517, it was held that the general provisions of the statute for improvement assessment did not apply to railways, for such 'railway track is not an abutting property assessable for special benefits thereto. The railway company has no abutting property in that sense.'

"Such improvement assessment therefore was held to be confined to the provisions of section 2189, Code of 1923, fixing the same at the actual cost of such improvement between the tracks and the rails of the track, and, in case there are two or more tracks, the space between each track, and 18 inches on each side. It is not pretended this statute was observed, but on the contrary the insistence seems to be that it has no application, for the reason the railway track crossed the street diagonally, and was not 'on any street' within the meaning of the statute. We see no merit in this insistence, but, even if so conceded, this would leave no statute applying whatever, in view of the holding in Ala. Traction Co. v. Selma Tr. & Savings Bk., supra.

"This statute (section 2189) is separate and distinct from the other provisions applicable to improvements of abutting property; the latter being a proceeding in rem, while in the statute here in question 'the paving cost is made a personal obligation of the railroad, secured by a blanket lien on its entire property.' Ala. City v. Alabama Power Co., supra.

"The two tax assessments are based upon entirely different principles, as disclosed by the opinion in Ala. Traction Co. v. Selma Tr. & Savs. Bk., supra.

"In the proceedings here in question, therefore, the only statute applicable was not observed. The statutory provisions that were

followed do not apply to railways." Nashville, C. & St. L. Ry. v. Town of Boaz et al., 213 Ala. 667, 668, 106 So. 192.

It is clear, from the utterances in these cases, that they do not hold that the Legislature is without power to authorize the assessment of the property of a quasi public service corporation with such part of the cost of such improvements made under the special or local improvement statutes, to the extent of the benefits accruing therefrom, as is reflected in the increased value of the specific property.

The power is expressly affirmed in Alabama Traction Co. et al. v. Selma Trust & Savings Bank, 213 Ala. 269, 104 So. 517, construing and applying section 2189 of the Code of 1923, which imposes a personal obligation on the owner and "on said railroad, and the property connected therewith," etc.

What they do hold is, that the power conferred on the governing boards of municipal corporations by the statute (section 2174, Code), in general terms, to levy assessments for street improvements, does not extend to the *rights of way and tracks* of quasi public corporations actively engaged in the exercise of their franchises as public carriers. This thought is aptly expressed in City of Huntsville v. Madison County, 166 Ala. 389, 391, 52 So. 326, 139 Am. St. Rep. 45, as follows: " * * * While there is a conflict, the weight, and, we think, the sounder authorities, hold that general language in a statute giving cities power to levy assessments for street improvements is not sufficient to embrace the property of the state or county which is devoted to *strictly public uses*, nor authorize the enforcement of such special assessment against it under a general judgment against the county. In other words, property owned and held by the state and counties for public purposes is generally exempt from taxation of any description, and is not to be deemed subject to taxation in any form, unless the intent of the Legislature to render it so clearly appears." (Italics supplied.) This case was cited, as we have shown, on the second appeal in City of Decatur v. Southern Railway Co., 187 Ala. 364, 65 So. 536.

While the statement in the concluding paragraph of the court's opinion in the Boaz Case, 213 Ala. 667, 669, 106 So. 192, 194,— "The statutory provisions that were followed [section 2174 of the Code] do not apply to railways"—when disassociated from the facts of the case and the questions being dealt with in that case, might be construed to refer to the owner, the railway company, but, when considered in the light of the facts and questions, it clearly refers to the physical property embraced within the term "railway," and not to the ownership. There the court was dealing with a proceeding in rem and the liability of the property, not the liability of the owner. This is clear from the next succeeding utterance: "As to the railway company [the party complaining], therefore, it must be held that these assessment proceedings are void."

If it should be conceded that the basis of the holdings in the Decatur Cases, supra, is that a sale of a segment of the right of way and roadbed of a quasi public corporation in satisfaction of assessments for benefits to such property, accruing from such assessments, would interrupt the operation of the business of such corporation, it must be conceded also that there is much force in appellants' contention that the proceedings authorized by the statute are also affected with a public interest; that the statute and the section of the Constitution authorizing such proceedings evince a public policy to charge property benefited to the extent of such benefit, and courts can know nothing of public policy except so far as supported by the Constitution and the law. Davis v. State, 68 Ala. 58, 62, 44 Am. Rep. 128; Hudson v. Stewart, Adm'r, 48 Ala. 204, 208; United States v. Vassar (License Tax Cases), 5 Wall. (U. S.) 462, 18 L. Ed. 497; 4 Mayf. Dig. 597, § 1.

There is no statute or constitutional provision exempting the property of such quasi public corporation from such assessments, along with the property of others, and no sound reason in law or in equity can be stated why such property should not be assessed to the extent of the benefits resulting from such public improvement.

While it is true that great public benefit results from the operation of the great trunk railroads, and they are essential to public demands of trade and commerce, it is also true that they are interested in the public and each locality through which their lines are operated, for it is from these sources that the cargoes emanate that enable them to continue in business.

In jurisdictions where the right to make such assessments is denied, the denial is limited to the roadbed, tracks, and right of way. We quote from 44 Corpus Juris, pp. 529, 530, 531, and 532, §§ 2889 to 2892:

" § 2889. In many jurisdictions it has been held for various reasons that the right of way and tracks of a railroad company are not subject to assessment for local improvements. In a number of jurisdictions the courts have denied without qualification the right to assess railroad rights of way and tracks for local improvements on the ground that as matter of law there can be no benefit from the improvement to such property for the purposes for which it is used or that if there is any benefit it is too remote and speculative for consideration; and in some of the jurisdictions the power to assess was denied on the further ground that there was no statutory authority to support such an assessment. In jurisdictions where this rule ob-

tains it is considered of no importance whether the railroad company owns the land in fee or has merely an easement therein; and it is considered that any legislation attempting to impose special assessments on this class of property is invalid as amounting to confiscation. * * * In some jurisdictions the power to assess railroad rights of way and roadbeds is denied on the ground that it is land appropriated to a public use. * * * In some jurisdictions the power to assess for local improvements property of the character under consideration was denied apparently on the ground that it is against public policy to enforce the assessment by sale; but as elsewhere shown under recent legislation in both of the jurisdictions where this ruling was made the right to assess such property is now recognized."

"§ 2890. Contrary to the view taken in some jurisdictions, in the greater number of jurisdictions where the question has arisen the power to impose assessments on railroad rights of way or tracks for benefits accruing from local improvements has been upheld, where the statute or charters in the particular case under consideration have been considered as sufficient to impose liability to special assessments on this class of property. Legislation of this character, it has been held, is not in violation of the organic law of either state or federal government. * * * While there is some authority to the contrary the better view seems to be that whether the company owns the land in fee or holds merely an easement therein is not material in determining its liability to assessment. And it has been held that the fact that a railroad right of way would in the event that the use as a railroad was abandoned revert to the grantor does not prevent the assessment thereof for a local improvement. But a mere license given to one railroad company to run its trains over the track of another company does not invest the former company with such ownership in the right of way as can be subjected to special assessments. An assessment is not invalidated by the fact that the effect of a sale to pay the assessment would be to sever an integral part of the railway, and interfere with the operation of the road."

"§ 2891. In accordance with elementary principles governing special assessments elsewhere considered statutory authority for levying special assessments against railroad rights of way and tracks is indispensable. By the express provision of some charters and statutes such property is made liable to assessment for local improvements, and it has been directly held in some decisions that express authority is indispensable. There is, however, considerable conflict of authority on this question. On the one hand, it has been held that an assessment is authorized by statutes authorizing an assessment against 'all property' within the assessment district, or

fronting on or adjoining the improvement; and this class of property has been held to be embraced within the terms 'real estate' or 'land,' 'property,' 'lot,' 'parcel of ground,' 'lots and parcels of land,' and 'a lot, piece or parcel;' also that it is embraced within the terms 'abutting' or 'contiguous' property. On the other hand, there is authority to the effect that this class of property is not included in the terms 'lots,' 'lot or parcel of land,' or lots, blocks, tracks or parcels of land. So it has been held that a tract in a city street used for a right of way by a railroad company is not property owned or controlled by it, but owned by the public and controlled by the municipality exclusively. * * * Under a statute authorizing the levy of special taxes to pave 'streets' no power exists to levy a special tax against a railroad company for the paving of a part of its right of way not used or necessary for right of way purposes and which the public has used as part of a public street for many years."

"§ 2892. In accordance with elementary principles governing the law relating to special assessments it is indispensable to the validity of an assessment against a railroad right of way or track for a local improvement that it should have been specially benefited by the improvement. The mere fact that a statute provides that the right of way of a railroad within an assessment district shall be assessed in the same manner as other land in the district merely requires that the land be not omitted because used for a right of way and not that it be assessed, although not benefited. And it is very generally declared that while there may be unusual conditions under which a railroad right of way or tracks can be benefited by local improvements, as a general rule it cannot be so benefited."

The court in Choctaw, Oklahoma & Gulf Railroad Company et al. v. Mackey, as County Treasurer, etc., 256 U. S. 531, 539, 41 S. Ct. 582, 584, 65 L. Ed. 1076, answering the contention that a sale for local improvements would affect a severance of a section of the right of way sold, and interrupt the public service, observed: "It is urged that, if the assessment is left unpaid, a sale to enforce the lien would sever an integral part of the railway. The same objection might be urged against the validity of a lien for general taxes locally assessed upon railroad property or a mechanic's lien upon the same. The objection is clearly unsound. * * * If the validity of the assessment is established, it may be assumed that due payment will follow. At all events, we have no occasion to deal with the method and means to be pursued in enforcing it."

That case, like this, was a bill to enjoin the enforcement of a lien and declare it void.

However, if it should be conceded that the rule of the Decatur Cases is opposed to the weight of authority, we do not feel warrant-

ed in overruling them, since the statutes considered therein have been brought forward into the Code of 1923, and readopted without change. Barnewall v. Murrell, 108 Ala. 366, 18 So. 831; Merchants' Nat. Bank of Mobile et al. v. Hubbard et al., 222 Ala. 518, 133 So. 723, 74 A. L. R. 646.

But whether the rules of those cases should be extended so as to embrace all property owned by such quasi public service corporations, or limited to the main line roadbed, tracks, and right of way, is an open question.

The great weight of authority is to the effect that, "property belonging to quasi public corporations, such as railway and other transportation companies, is controlled by substantially the same rules governing other cases of assessments for local improvements, and railroad property, other than the roadbed or right of way, has been held liable in almost every instance wherever it has been benefited by the local improvement." 25 R. C. L. p. 117, § 34; Branson, Sheriff, etc., v. Bush, Receiver, etc., 251 U. S. 182, 40 S. Ct. 113, 64 L. Ed. 215; Choctaw, Oklahoma & Gulf Railroad Co. et al. v. Mackey, as County Treas., etc., supra; Minneapolis, St. Paul & Sault-Ste. Marie Railway Co. v. City of Minot, 51 N. D. 313, 199 N. W. 875, 37 A. L. R. 211 and note 220, et seq.; Atlantic Coast Line R. Co. v. City of Gainesville, 83 Fla. 275, 91 So. 118, 29 A. L. R. 668.

The text in Corpus Juris thus states the rule: "As a general rule, unless expressly exempted by legislation or by organic law, property of both steam railroads and street railroads may by appropriate legislation be made liable to special assessments for local improvements. This power, of course, is subject to the limitation attending all property of whatsoever nature that it cannot be subjected to assessment unless it receives a special benefit from the improvement for which the assessment is laid, and to the further limitation that although it may be benefited by the improvement the assessment must not be in excess of benefits." 44 C. J. pp. 527, 528, § 2888.

The case of City of Mobile v. Mobile & Ohio Railroad Company (Ala. Sup.) 147 So. 606, is a direct appeal from the assessment, involving a local assessment, "under Code, § 2174, upon abutting property owned by a railroad company, and devoted to public use as the railway roundhouse at the terminus of the division."

The liability of the property to the assessment was denied on two grounds: First, "That, for reasons of public policy, it is not subject to sale for the payment of such assessment, and the assessment is void"; and, second, that no special benefits to the property resulted from the local improvement.

Dealing with the first ground—the opinion does not undertake to state the source of such public policy, and, to apply that principle broadly, as stated, it not only denies the power of the city of Mobile, but the power and authority of the Legislature to authorize such assessment, and ignores the public policy evinced by section 223 of the Constitution and the statute passed in pursuance thereof. If the first ground stated is sound, there was no necessity for dealing with the second ground.

It is not clear from the opinion whether the court intended to hold, as matter of law, that no benefits could accrue to property constituting a part of the plant and actually used, or whether as a matter of fact, on the undisputed evidence, no benefit did accrue to the property against which the assessment was made. If the court intended to hold, as a matter of law, that no benefits accrued, it failed to take account of the fact that the roundhouse of a railway system is operated by local employees; that street improvements abutting its property make it more convenient of access, and was a convenience and aid to its local employees in reaching their work and the prompt performance of their duties, and probably aided drainage and made more comfortable its local plant.

As to the second ground of that decision, my judgment is that as to all property, except the right of way, roadbed, and main line tracks, the question of whether or not benefits accrue to abutting property by reason of local improvements is a question of fact, litigable in the proceedings on objection of the property owner, and in the absence of such objection, the proceedings being regular on their face, the property owner is estopped by the statute from litigating this question in a bill to quiet title. City of Birmingham v. Wills, 178 Ala. 198, 59 So. 173, Ann. Cas. 1915B, 746; Ex parte Gudenrath (In re City of Huntsville v. Gudenrath), 194 Ala. 568, 69 So. 629; City of Mobile v. Smith, 223 Ala. 480, 136 So. 851.

The same would be true as to the right of way, roadbed, and tracks, if it were a question of exemption only (City of Mobile v. Smith, supra), and not an absence of power; that is, that the statute does not extend to this species of property.

While much was said on the first appeal in City of Decatur v. Southern Railway Co., 183 Ala. 531, 62 So. 855, 48 L. R. A. (N. S.) 231, about public policy, and the cases of Eufaula Water Co. v. Addyston Pipe & Steel Co., 89 Ala. 552, 8 So. 25, and Gardner et al. v. Mobile & N. W. R. R. Co., 102 Ala. 635, 15 So. 271, 273, 48 Am. St. Rep. 84, were cited, the true grounds of the decision were stated, as we have shown, on the second appeal (City of Decatur v. Southern Rwy. Co., 187 Ala. 364, 65 So. 536) and subsequent cases —that the right of way of a railway company was not within the general provisions

of the statute; that to this end more specific legislative provisions were necessary.

Eufaula Water Co. v. Addyston Pipe & Steel Co., supra, was an action at law to establish and enforce a mechanic's or materialman's lien for water pipes furnished to the water company, and it was decided in that case that the facts did not make a case within the statute, and, while the opinion suggested the rule of public policy, the court expressly refrained from applying it in that case.

Gardner et al. v. Mobile & N. W. R. R. Co., supra, involved the validity of an execution sale of a portion of the right of way, and the sale was upheld on the ground that the right of way was not in actual use, but in the course of the opinion the learned Chief Justice stated: "As a general rule, the property of all private corporations is as subject to legal process for the satisfaction of debts as is the .property of natural persons. An exception obtains, however, when the corporation is created to serve public purposes, charged with public duties, and is in the exercise of its franchise and in the performance of its duties. Then, on considerations of public policy, without regard to the nature or quality of the estate or interest of the corporation, according to the weight of authority, such property as is necessary to enable it to discharge its duties to the public, and effectuate the objects of its incorporation, is not subject to execution at law," citing 1 Freeman on Executions, § 179. That authority states the rule: "A 'franchise being an incorporeal hereditament, cannot, upon the settled principles of the common law, be seized under a fieri facias,'" and, after stating the effect of some of the cases, he proceeds: "While franchises have been held not subject to execution, for the avowed reason that they are intangible, and cannot be delivered by the sheriff to the purchaser, it seems to be doubtful whether this is the true —or at all events, whether it is the only— ground upon which said exemption rests. If this were the only ground the franchise could not operate for the protection of tangible property capable of delivery by the officer. In truth, we think the chief, if not the sole, ground for the exemption of franchises from execution is, that they are in theory grants of special privileges from the sovereign power to persons, natural or artificial, and are, in the absence of permission from that power, not assignable by them, and hence, not subject to transfer under process against them. It is, therefore, we think, substantially free from controversy, that a franchise cannot be subjected to execution unless the statutes of the state, by whose authority the franchise was granted, have provided that it shall be so subjected and pointed out the means by which the creditor may proceed under execution." 2 Freeman on Executions (3d Ed.) § 179.

This is the basis of the rule of public policy, and still the authorities seem to be well-nigh uniform that the Legislature may authorize the assessments and sale of such railroad rights of way by specific provisions. Simmons v. Worthington, Jr., 170 Mass. 203, 49 N. E. 114; 2 Freeman on Executions (3d Ed.) § 179.

It may be suggested that it does not appear that the state granting the franchise has conferred such authority. The answer is that the railway company acquired its real property in this sovereignty, subject to her laws, and it must be governed thereby.

I am therefore at the conclusion that the theory that the assessment cannot be enforced on the grounds of public policy is wholly fallacious and without any foundation in law, except as to the main line, roadbed, tracks, and right of way, and the only foundation for this exception is the decision of this court in the Decatur Cases, supra. 50 C. J. p. 857 [§ 62] 61.